# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JAWANZAH CROCKETT,

       *Plaintiff*,

    v.

MAYOR OF THE DISTRICT OF
COLUMBIA, *et al*.

       *Defendants.*

Civil Action No. 16-1357 (RDM)

## <u>MEMORANDOM OPINION AND ORDER</u>

Plaintiff Jawanzah Crockett, proceeding *pro se*, brings this action against the District of Columbia Public Schools ("DCPS"); various school administrators, managers, and teachers; and the Mayor of the District of Columbia. The case focuses on a series of events occurring over the course of Crockett's tenure as a student at Wilson Senior High School ("Wilson H.S."). DCPS determined that Crockett was entitled to special education services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*., and he eventually received an Individualized Education Plan ("IEP"). Crockett alleges, however, that Defendants failed to accommodate his disability; that Wilson H.S. did not properly implement the IEP; that he was otherwise denied the Free Appropriate Public Education ("FAPE") to which he was entitled; that DCPS unlawfully disclosed portions of his protected educational records; and that Defendants inaccurately reported his attendance and grades. Based on these factual allegations, he asserts claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*.; the IDEA; the D.C. Student Grievance Procedures, D.C Mun. Regs. tit. 5B, § 2405; the Family

Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*; and an array of common law torts.

In an equally multifaceted response, Defendants move to dismiss or, in the alternative, for summary judgment, raising a host of defenses. Their central argument is that Crockett brought a similar action in D.C. Superior Court in June 2015; that he was unsuccessful there; and that he is now barred by the doctrines of claim and issue preclusion from litigating his case before this Court. In addition to that argument, Defendants contend that Crockett's current lawsuit should be dismissed for failure to exhaust administrative remedies under the IDEA; that his complaint fails to state a claim of negligence or neglect of duty; that his remaining tort claims are barred by a one-year statute of limitations; that DCPS is *non sui juris* and thus not subject to suit; and that the complaint fails to include any factual allegations directed at the Mayor.

For the reasons explained below, the Court will **GRANT** in part and **DENY** in part Defendants' motion.

## I. BACKGROUND

Crockett began attending Wilson H.S. in the fall of 2011. Dkt. 1 at 3 (Compl. ¶ 15). He struggled during that first year, and his mother asked that he be tested to determine eligibility for special education services. *Id.* (Compl. ¶¶ 15–16). An accommodations plan drafted under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, led to improved performance in his sophomore year. *Id.* Still, miscommunications and disagreements about the plan hampered its implementation, and Crockett's mother continued to push for further evaluation of her son. *Id.* (Compl. ¶¶ 17–24). Eventually, DCPS conceded that Crockett was entitled to an IEP under the IDEA. *Id.* (Compl. ¶¶ 21–22). On April 7, 2014, during the spring of Crockett's junior year,

Wilson H.S. finally produced the IEP, *id.* (Compl. ¶ 22), but, according to Crockett, the school almost immediately fell into noncompliance, *id.* (Compl. ¶ 27).

Before challenging that noncompliance, however, Crockett's mother filed a different due process complaint with the D.C. Office of the State Superintendent of Education ("OSSE"), challenging DCPS's failure to offer Crockett an IEP earlier in his time at Wilson H.S. *See* Dkt. 12-8 (First OSSE Hearing Report). The OSSE hearing officer concluded in December 2014 that DCPS had failed to provide Crockett a FAPE from October 11, 2012, to April 7, 2014—that is, for much of his high school career. *Id.* at 3, 8–11. As compensatory education, the OSSE hearing officer ordered DCPS to provide Crockett 200 hours of independent tutoring, 20 hours of behavior counseling, and reimbursement for prior tutoring expenses. *Id.* at 10. Crockett has not called into question DCPS's compliance with that award.

During the 2014–2015 school year, Crockett was initially placed into a self-contained classroom (one containing only students receiving special education services) for math, as contemplated by his IEP. Dkt. 12-7 at 5 (Second OSSE Hearing Report). Because he was substantially more advanced than other students in the self-contained classroom, Crockett's special education teacher recommended that he be returned to the general education classroom for math. *Id.* At his mother's request, that switch was made. *Id.* Crockett then passed both math classes he took his senior year. *Id.*

By contrast, Crockett struggled in Spanish. Despite his mother's repeated efforts to coordinate with his teachers to make sure all of his assignments were turned in, he ultimately failed that class. *Id.* Crockett contends that this failing grade was the product of a host of missteps by Defendants, including failing to provide adequate support and accommodations, "denying [his] parent access to teachers to assist in organizing . . . and keeping track of [his]

assignments," Dkt. 1 at 13 (Compl. ¶ 87), misrepresenting the number of assignments that had yet to be completed, *id*. at 8–9 (Compl. ¶¶ 48–57); *id*. at 15–16 (Compl. ¶ 103), and falsifying attendance records, *id*. at 17–18 (Compl. ¶¶ 112, 118–25).  Because he failed Spanish, Crockett was unable to graduate with his class, and was required to repeat the course over the summer. Dkt. 12-7 at 5.

After receiving notice of his failing grade in Spanish, Crockett took two actions.  First, he lodged another due process complaint with OSSE.  *See* Dkt. 12-7.  The complaint alleged that his mother had not been timely provided with his most recent IEP and that the school's decision to return him to the math general education classroom at his mother's request had not relieved the school of its obligation to provide him with additional educational services in math.  *See id*. at 4–5.  Although those claims had nothing to do with his Spanish grade, Crockett sought compensatory education in the form of Spanish tutoring, funding for the Spanish summer school course he was taking to graduate, and enrollment in a college preparatory course.  *Id*. at 9.  A due process hearing was held on July 23, 2015.  *Id*. at 2.  On August 7, 2015, the OSSE hearing officer rejected Crockett's first claim, but ruled that Wilson H.S.'s failure to provide Crockett with the additional math support contemplated by his IEP violated the IDEA.  *Id*. at 6–8.  The hearing officer found the proposed relief inappropriate, however, because it did not "correlate[]" with that omission.  *Id*. at 9.  As a result, the hearing officer instead ordered that Crockett receive "20 hours of independent behavior counseling."  *Id*. at 10.

Second, Crockett brought suit against DCPS, Wilson H.S., and various school administrators and teachers in D.C. Superior Court, seeking a temporary restraining order and preliminary injunction to compel Wilson H.S. to allow him to "pick up [his] cap and gown, participate in graduation rehearsal and graduate on June 13 with [his] class."  Dkt. 12-2 at 1

(Superior Court Complaint). Crockett's complaint did not identify a particular cause of action, but it did allege that the defendants in that action had failed to provide him with "accommodations" and had failed to act in a timely manner on "grade disputes" that he had raised. *Id.* The complaint left little doubt, moreover, that Crockett's allegations were focused—at least in large part—on his failing grade in Spanish. *Id.*

A hearing on Crockett's motion for a temporary restraining order was convened the day prior to the Wilson H.S. graduation, and that motion was denied. The Superior Court held:

> [P]laintiff has not established that he would be irreparably damaged by not being permitted to participate in the graduation ceremony on June 13, 2015, nor that he would likely prevail at trial, nor that he would be more damaged than would be defendant, nor that the public good would be injured by withholding injunctive relief.

Dkt. 12-3. Three days later, the Superior Court denied Crockett's motion for a preliminary injunction for those same reasons. *See* Dkt. 12-4.

The defendants in that case then filed a motion to dismiss, which the Superior Court granted on August 25, 2015. *See* Dkt. 12-5. Although the complaint had not expressly identified a cause of action, the Superior Court construed it to "arise[]" under 20 U.S.C. § 1415(b)(6)(A), the provision of the IDEA that provides for administrative due process hearings like those Crockett won in December 2014 and August 2015. *Id.* at 4. As the Superior Court explained, the IDEA sets forth "carefully tailored administrative and judicial mechanism[s]" to challenge the failure of a school system to provide a child with a FAPE. *Id.* at 6 (quoting *Bonar v. Ambach*, 771 F.2d 14, 18 (2d Cir. 1985)). In particular, the child's parents must first pursue a due process hearing conducted by either the state educational agency or by the local educational agency. *See* 20 U.S.C. § 1415(f); *see also* Dkt. 12-5 at 5. Under D.C. law, the initial due

process hearing is conducted by the state educational agency,[1] Dkt. 12-5 at 5, and its decision is treated as final agency action for purposes of the IDEA, *see* 20 U.S.C. § 1415(i)(1)(A). It is only after obtaining such a final agency decision, however, that the IDEA authorizes an aggrieved party to bring a civil action in state or federal court. *Id.* § 1415(i)(2)(A); *see also* Dkt. 12-5 at 5. In light of this regulatory structure, the Superior Court held that Crockett had failed to exhaust his administrative remedies under the IDEA because neither he nor a parent pursued a due process hearing respecting the claims he sought to raise in the Superior Court action. Dkt. 12-5 at 5–6. As a result, the court lacked "subject matter jurisdiction." *Id.*

Crockett then appealed the Superior Court's decision to the D.C. Court of Appeals. Nine months later, the Court of Appeals dismissed the appeal as moot. Dkt. 13-1 at 1–2. In a summary order, the court explained that Crockett sought only injunctive relief—that is, an order requiring that he be allowed to graduate with his class—and because the graduation ceremony had already taken place, there was "no relief that [the] court [could] provide." *Id.* at 1. Crockett did not request that the D.C. Court of Appeals vacate the Superior Court's decision, and the Court of Appeals did not order vacatur *sua sponte*.

Less than three weeks after the D.C. Court of Appeals dismissed his appeal, Crockett filed the present action. Dkt. 1. Five of the defendants in this case were also named in the earlier suit: DCPS, Wilson H.S.'s assistant principal for special education, the school's acting principal, Crockett's Spanish teacher, and his special education case manager. *Compare* Dkt. 12-1 at 1, *with* Dkt. 1 at 2–3. To this list, the present suit adds six new defendants: the DCPS

---

[1] The Court notes that despite some confusion in the briefing regarding the Superior Court's holding, the decision indicates that Crockett's Superior Court claims were distinct from the earlier claims that he had pursued through the OSSE process. *Compare* Dkt. 12-5 at 4–5, *with* Dkt. 15 at 9, *and* Dkt. 16 at 2–4.

"Instructional Superintendent managing Cluster VIII schools," a second Spanish instructor at Wilson H.S., Wilson H.S.'s "assistant principal for 2015 summer school and attendance supervisor," an attendance counselor at Wilson H.S., an AP English teacher at the school, and the Mayor of the District of Columbia.[2]  Dkt. 1 at 1–3.  Unlike his prior suit, which sought only injunctive relief, this case seeks only damages.  Dkt. 1 at 21–22.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  The Court must "assume [the] veracity" of "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and must "grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted).  The Court, however, need not accept "a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In addition to challenging the adequacy of Crockett's allegations, Defendants raise two affirmative defenses:  (1) that claim and issue preclusion bar all of Crockett's claims; and (2) that

---

[2]  Crockett concedes the Mayor of the District of Columbia should not be a defendant in this action, and he explains that he was only attempting to serve the Mayor's office in compliance with D.C. Rules of Civil Procedure.  Dkt. 15 at 14.  The Court will therefore grant Defendants' motion to dismiss all claims against the Mayor of the District of Columbia.

his intentional tort claims are time barred. *See* Fed. R. Civ. P. 8(c). "[A]n affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998). Dismissal is improper, however, "as long as a plaintiff's potential rejoinder to the affirmative defense [is not] foreclosed by the allegations in the complaint." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013) (alteration in original) (internal quotation marks omitted).

Defendants also move for summary judgment, and that motion is governed by yet a third standard. Summary judgment is available "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *Holcomb*, 433 F.3d at 895; *Liberty Lobby*, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *See Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Potomac Elec.*

*Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006).  The non-movant's opposition, however, must

consist of more than unsupported allegations or denials and must be supported by affidavits,

declarations, or other competent evidence, setting forth specific facts showing that there is a

genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The non-movant must provide evidence that would permit a reasonable jury to find in its favor.

*See Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  If its evidence is

"merely colorable" or "not significantly probative," summary judgment may be granted.  *Liberty*

*Lobby*, 477 U.S. at 249–50.

## III.  ANALYSIS

### A.    Claim and Issue Preclusion

Defendants devote much of their motion to the contention that Crockett's entire lawsuit

"is barred by . . . *res judicata*," Dkt. 12 at 9, a term that encompasses both claim preclusion and

issue preclusion, *see Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  In their view, a court of

competent jurisdiction has already issued a final judgment dismissing a claim based on the same

"nucleus of facts" and involving the same parties (or their privies).  That disposition, according

to Defendants, precludes Crockett from seeking to relitigate—or to litigate—claims that he

raised—or could have raised—in the earlier action.  As explained below, the relevant inquiry is

more complex than this and turns, instead, on the nature of the Superior Court's decision and the

scope of the IDEA's exhaustion requirement.  Ultimately, claim preclusion is unavailable to the

Defendants, and only a limited form of issue preclusion can be employed.  The Court will,

accordingly, grant in part and deny in part Defendants' motion for summary judgment based on

*res judicata*.

1.      *Claim Preclusion*

"Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). In other words, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). Claim preclusion serves "to promote the finality of judicial determinations, to foster reliance on judicial decisions by minimizing the possibility of inconsistent decisions, to conserve judicial resources, and to spare adversaries the vexation and expense of redundant litigation." *Ramey v. Potomac Elec. Power Co.*, 580 F. Supp. 2d 48, 51 (D.D.C. 2008) (citing *Montana,* 440 U.S. at 153). Whether a new claim is barred as a matter of claim preclusion hinges on a four-part test. A lawsuit is barred if a prior case was litigated "(1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323–24 (1971); *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948)). A discussion of only the third prong is necessary for present purposes.

Defendants contend that the Superior Court's decision was "a final, valid judgment on the merits" for purposes of claim preclusion because Crockett was able to appeal it, and after the dismissal of his appeal as moot, he "never moved to reconsider" the decision of the Superior Court. Dkt. 12 at 14. As Defendants explain, "[t]raditionally, finality [is] identified for purposes of preclusion in much the same way as it [i]s identified for purposes of appeal," *id.* (quoting 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4432 (2d ed. 2005)),

and, thus, the fact that the Superior Court's decision was "ripe for appeal" leaves little doubt that the decision was also final for purposes of claim preclusion, *id*. Defendants conclude that, given the subsequent dismissal of Crockett's appeal, "there [is] no material dispute of fact regarding whether the Superior Court case . . . was final." *Id*. Defendants' observation, however, elides the question of *what* was finally resolved. The answer to that question is important because not all dismissals are "on the merits" for purposes of claim preclusion.

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). To determine whether the dismissal here was "on the merits," the operative provision of state law is Rule 41(b) of the D.C. Rules of Civil Procedure. For present purposes, however, D.C. and federal law are in lockstep. *See Dorchester House Assocs. Ltd. P'ship v. D.C. Rental Hous. Comm'n*, 913 A.2d 1260, 1265 (D.C. 2006) (because "Rule 41 is 'substantially identical' to the corresponding federal rule [it] is 'to be construed in light of the meaning of that federal rule.'"). Both D.C. Rule of Civil Procedure 41(b) and Federal Rule of Civil Procedure 41(b) address the types of dismissals that are treated as adjudications "on the merits," as opposed to those that are "without prejudice" to "refiling of the same claim" in the same court. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001). And both rules expressly provide that a dismissal "for lack of jurisdiction" does not operate "as an adjudication on the merits." Fed. R. Civ. P. 41(b); D.C. R. Civ. P. 41(b).

As discussed above, the Superior Court dismissed Crockett's IDEA claim on the ground that Crockett failed to exhaust his administrative remedies and that, as a result, the court lacked subject matter jurisdiction. Dkt. 12-5 at 5–6. This reasoning would seem to require rejection of

Defendants' claim preclusion argument. Although not raised, the Court can imagine two possible retorts to this conclusion, neither of which has merit.

First, one might reasonably question whether the Superior Court's dismissal really was for lack of jurisdiction. As the Supreme Court has stressed in recent years, "[j]urisdiction . . . is a word of many, too many, meanings." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006) (citation and internal quotation marks omitted). In other contexts, the Supreme Court and D.C. Circuit have clarified that certain exhaustion requirements are not jurisdictional in the sense of depriving the court of adjudicative power. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010); *NetCoalition v. S.E.C.*, 715 F.3d 342, 353 (D.C. Cir. 2013). Neither the Supreme Court nor the D.C. Circuit has resolved whether exhaustion under the IDEA is jurisdictional in this sense. *Compare T.H. v. District of Columbia*, --- F. Supp. 3d ---, No. 17-0196, 2017 WL 2533354, at *3 (D.D.C. June 9, 2017) (noting that "the D.C. Circuit has not ruled on whether the IDEA's exhaustion requirement is jurisdictional"), *and id.* at *4 ("[T]his Court concludes that [the] IDEA's administrative-exhaustion requirement is not jurisdictional."), *with Douglass v. District of Columbia*, 750 F. Supp. 2d 54, 59 (D.D.C. 2010) ("A court has no subject matter jurisdiction over an IDEA claim that has not first been pursued through administrative channels." (quoting *Massey v. District of Columbia*, 400 F. Supp. 2d 66, 70 (D.D.C. 2005)). Nor must this Court do so here. The relevant question is not whether the Superior Court was without power to act, but whether its dismissal of Crockett's complaint constituted "an adjudication on the merits" as claim preclusion requires. The Supreme Court has answered that question in the negative.

In *Costello v. United States*, 365 U.S. 265 (1961), the Court considered whether the prior dismissal of an immigration proceeding for failure to file the requisite "affidavit of good cause"

barred a subsequent proceeding when the earlier dismissal did not specify whether it was with or without prejudice under Rule 41(b). *Id.* at 284–88. Interpreting the same language in the rule at issue here, the Court held that the dismissal was "'for lack of jurisdiction' within the meaning of the exception under Rule 41(b)." *Id.* at 285. The Court wrote: "It is too narrow a reading of the exception to relate the concept of jurisdiction embodied there to the fundamental jurisdictional defects which render a judgment void . . . , such as lack of jurisdiction over the person or subject matter." *Id.* And, of particular relevance, the Court explained that the "for lack of jurisdiction" provision of Rule 41(b) was capacious enough to reach "a plaintiff's failure to comply with a precondition" to bringing suit. *Id.* That is precisely what happened here, regardless of whether the failure to exhaust divested the Superior Court of power to adjudicate the case or merely provided a threshold defense to the action.

Second, the Court recognizes that some have questioned whether the "on the merits" determination under Rule 41(b) is invariably dispositive of an assertion of claim preclusion. For that reason, the drafters of the Restatement (Second) of Judgments declined to use the phrase in the pivotal provision of the Restatement, *see* Restatement (Second) of Judgments § 19 cmt. a (1980), and the Supreme Court has opined that "it is no longer true that a judgment 'on the merits' is necessarily a judgment entitled to claim-preclusive effect," *Semtek*, 531 U.S. at 503. But both the Restatement and the Supreme Court have left little doubt that a claim that is dismissed for failure to satisfy a precondition to suit, as was Crockett's claim, is not barred by virtue of the claim preclusion doctrine. The Restatement provides that "[a] valid and final personal judgment . . . , which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied." Restatement (Second) of Judgments

§ 20(2); *see also id*. cmt. k; *Murthy v. Vilsack*, 609 F.3d 460, 466 (D.C. Cir. 2010) (quoting Restatement (Second) of Judgments § 20(2)).  The Supreme Court, moreover, has held that the fact that an earlier claim was subject to dismissal with prejudice under Rule 41(b) may not be a sufficient condition for a later assertion of preclusion, but it "is undoubtedly a necessary condition."  *Semtek*, 531 U.S. at 506; *cf. Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016) (approvingly citing § 20(2) for the proposition that the "development of new material facts," analogous to the fulfillment of a precondition, "can mean that a new case and an otherwise similar previous case do not present the same claim" for the purposes of claim preclusion).

The Court, accordingly, concludes that the Superior Court's decision dismissing Crockett's claim for failure to exhaust administrative remedies does not support Defendants' assertion of claim preclusion.

2.     *Issue Preclusion*

That, however, does not end the inquiry about the effect of the Superior Court's decision. The Court must also consider how the doctrine of issue preclusion applies in this context.  The fact that the Superior Court merely decided that Crockett had failed to satisfy a precondition to suit does not foreclose application of issue preclusion.  To the contrary, both the Restatement and existing precedent sensibly recognize that a plaintiff who has failed to satisfy a precondition to suit may not return to court without satisfying that precondition.  In the words of the Restatement, a "plaintiff's failure to satisfy a precondition to suit . . . does not bar another action by the plaintiff instituted *after . . . the precondition has been satisfied*."  Restatement (Second) of Judgments § 20(2) (emphasis added).  Or, in the words of the Court of Appeals for the Seventh Circuit, where a court has dismissed a claim for failure to exhaust, that decision is "preclusive

with respect to an attempt by [the same plaintiff] to relitigate the question whether he had exhausted his administrative remedies." *Hill v. Potter*, 352 F.3d 1142, 1147 (7th Cir. 2003); *see also Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1103–04 (8th Cir. 2013); *Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136–37 (10th Cir. 2004); *D'Amico v. CBS Corp.*, 297 F.3d 287, 294 (3d Cir. 2002); *Segal v. Am. Tel. & Tel. Co., Inc.*, 606 F.2d 842, 845 (9th Cir. 1979).

Here, Crockett does not contend that he took any steps "between the dismissal of the first suit and the filing of the second" that "satisfied the precondition" to bringing suit, and therefore the Superior Court's decision has "preclusive effect" with respect to that issue. *In re Sonus Networks, Inc., S'holder Derivative Litig.*, 499 F.3d 47, 62 (1st Cir. 2007). The Court must, accordingly, decide the scope of that preclusion. That question is less straightforward.

"Issue preclusion bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment.'" *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (quoting Restatement (Second) of Judgments § 27). For issue preclusion to apply, "[1] the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2] the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case[; and] [3] preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).

The first of these elements raises the question whether the preclusive effect of the Superior Court's non-exhaustion holding applies to all of the defendants in this action, or only to those who were also parties to the Superior Court action. Although there was a time when courts

drew distinctions of this type, "[i]nvocation of the doctrine is no longer restricted to those who were parties to the first litigation or their privies, for it has come to be widely accepted that usually little good and much harm can come from allowing a determined plaintiff to retry the same issues in exhausting fashion against successive defendants." *McLaughlin v. Bradlee*, 803 F.2d 1197, 1204–05 (D.C. Cir. 1986). Some exceptions exist to this general rule that issue preclusion may be employed defensively by parties that were not involved in the initial action, *see*, *e.g.*, *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 522 F.3d 443, 447 (D.C. Cir. 2008) (declining to apply nonmutual defensive issue preclusion when question was one of law rather than a mixed question of law and fact), but none applies here. Thus, all the defendants meet the first element required for issue preclusion.

Nor is there any doubt that the second and third elements of the test are satisfied here. With respect to the second element, the Superior Court was unquestionably a court of "competent jurisdiction," and its finding that Crockett had failed to exhaust his administrative remedies was determinative. And the third element, which asks whether "preclusion in the second case . . . [will] work a basic unfairness to the party bound by the first determination," *Yamaha*, 961 F.2d at 254, rarely applies when "[t]he party to be bound . . . is the plaintiff," *McLaughlin*, 803 F.2d at 1202 n.1. Accordingly, all of the defendants are entitled to rely on issue preclusion as to at least Crockett's IDEA claim, and the Court will therefore grant Defendants summary judgment on Count II.

A further question is presented, however, that could affect the extent to which Crockett is entitled to pursue some or all of his remaining claims. A plaintiff's failure to exhaust IDEA remedies will, at times, preclude the plaintiff from pursuing other, related claims, including claims brought under the ADA and Section 504 of the Rehabilitation Act. The Supreme Court

recently addressed this issue in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017).  As explained in that decision, the "[Supreme] Court first considered the interaction between such laws and the IDEA in *Smith v. Robinson*, 468 U.S. 992 [(1984)]," which held that the IDEA established a comprehensive scheme that foreclosed related claims brought under other laws. *Fry*, 137 S. Ct. at 750.  Congress responded to the *Robinson* decision by amending the IDEA to add "a carefully defined exhaustion requirement."  *Id.*  That new provision, codified at 20 U.S.C. § 1415(l), provides:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including Section 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

Section 1415(l) thus "requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit seek[s] relief that is also available under the IDEA."  *Fry*, 137 S. Ct. at 752 (internal quotation marks omitted).

This standard poses three questions here.  First, do all or some of Crockett's non-IDEA claims "seek redress for [Defendants'] failure to provide [Crockett with] a FAPE, even if not phrased or framed in precisely that way[?]"  *Id.* at 755.  If so, those claims may be foreclosed by the Superior Court's holding that Crockett failed to exhaust under the IDEA, depending on the resolution of the second question:  Does the fact that Crockett is seeking only money damages bring his current claims outside the IDEA and the § 1415(l) exhaustion requirement?  The Supreme Court left this precise issue "for another day," although it noted that the Solicitor General took the view that exhaustion is not required under those circumstances.  *Id.* at 752 n.4;

Brief for the United States as Amicus Curiae at 15–25, *Fry*, 137 S. Ct. 743 (No. 15-497). The view articulated by the Solicitor General, moreover, finds support in the language of the IDEA, which limits the exhaustion requirement for non-IDEA claims to those that seek "relief that is also available under" the IDEA, 20 U.S.C. § 1415(l), and in case law holding that damages are not available under the IDEA, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 254 n.1 (2009). And third, does the IDEA foreclose *state law* claims seeking redress for a school system's failure to provide a student with a FAPE? *See* 20 U.S.C. § 1415(l) ("Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under . . . *Federal laws* protecting the rights of children with disabilities." (emphasis added)).

Because *Fry* was decided after the briefing in this case was complete, and because neither party has addressed the effect of *Fry* or the application of § 1415(l) to state law claims, the Court will refrain from deciding those issues at this time. Instead, with the exception of dismissing Crockett's IDEA claim, the Court will deny Defendants' motion without prejudice. If appropriate, Defendants may renew their issue preclusion defense at a later time.

## B. Remaining Defenses

### 1. *Negligence and Neglect of Duty*

Defendants argue that Counts IX and X of the complaint do "nothing more than recast, in conclusory terms, [Crockett's] intentional tort[]" and federal statutory causes of action and thus fail to state claims sounding in negligence. Dkt. 12 at 19. Nothing, however, precludes a plaintiff from pleading in the alternative, and, viewed in light of the "less stringent standards" applicable to *pro se* pleadings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), Crockett's complaint adequately alleges that Defendants engaged in negligent conduct. Count IX, for example, alleges that three of the individual defendants had "a duty to provide accurate records of assignments turned in" that was "breached

. . . when they did not do so." Dkt. 1 at 19 (Compl. ¶ 139). Likewise, Count X alleges that "DCPS was negl[igent] in its duty to ensure that each teacher and provider was informed of his or [her] specific responsibilities related to implementing [Crockett's] IEP . . . and the specific accommodations, modifications, and supports that" were required, *id.* at 20 (Compl. ¶ 150), and that one of the individual defendants "neglected her duty as a case manager responsible for informing [Crockett] of missing assignment[s]," *id.* at 21 (Compl. ¶ 152).

It is far from clear that these claims pass muster, but, if they are flawed, it is not for the reason posited in Defendants' motion. The Court will, accordingly, deny Defendants' motion to dismiss Counts IX and X.

2. *Intentional Torts*

Defendants also argue that Crockett's intentional tort claims are barred by the statute of limitations. The section of the D.C. Code that they cite for this proposition, D.C. Code § 12-301, provides that a one-year statute of limitations applies to actions "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment." Defendants, however, read too much into the provision when they assert *categorically* that "the last day to challenge any intentional act [was] June 14, 2016." Dkt. 12 at 20. Count V, which asserts a claim for intentional infliction of emotional distress, is subject to a three-year statute of limitations. *See Nyambal v. Alliedbarton Sec. Servs., LLC*, 153 F. Supp. 3d 309, 314 (D.D.C. 2016). Count VI, which alleges fraud, is also subject to a three-year statute of limitations. *See Drake v. McNair*, 993 A.2d 607, 617 (D.C. 2010). Finally, the claim for harassment asserted in Count VIII is not among the enumerated intentional torts in D.C. Code § 12-301, and must therefore be presumed to have a three-year statute of limitations. *See* D.C. Code § 12-301(8). Defendants' motion will therefore be denied as to these claims, because Crockett filed the present complaint on June 28, 2016, well within three years of the conduct at issue. *See* Dkt. 1.

Count VII, which asserts a claim for defamation, is subject to a one-year statute of limitations. *See Maupin v. Haylock*, 931 A.2d 1039, 1041 (D.C. 2007). It is unclear from the complaint, however, when the allegedly defamatory assertions were made. Much of Crockett's complaint focuses on his inability to participate in the graduation ceremony with his class on June 13, 2015. *See, e.g.*, Dkt. 1 at 11 (Compl. ¶¶ 65–70); *id.* at 17 (Compl. ¶ 118); *id.* at 18 (Compl. ¶ 131). He did not bring this suit, however, until June 28, 2016—more than a year after many of the relevant events occurred. But Crockett's defamation claim points to misstatements contained in "his report card" and made to the "Office of the State Superintendent, to [the] Metropolitan Police, to attorneys, and to any agency requesting [his] attendance" records. Dkt. 1 at 18 (Compl. ¶ 127). Without knowing when these alleged misstatements were made, the Court cannot dismiss Crockett's defamation claim on statute of limitation grounds.

3.      *Claims Against District of Columbia Public Schools*

"[S]ubordinate agencies within the District of Columbia government are not subject to suit, unless" such an action is "specifically [provided for] by statute." Dkt. 12 at 21 (citing *Blackmar v. Guerre*, 342 U.S. 512 (1952); *Cmty. Hous. Tr. v. Dep't of Consumer & Regulatory Affairs*, 257 F. Supp. 2d 208 (D.D.C. 2003)). Relying on this principle, Defendants contend that the complaint improperly names DCPS, and they request that the Court dismiss all claims against the school district. The Court agrees with Defendants about the ailment, but not the cure.

"Where a plaintiff, through unknowing mistake, names an improper defendant in her complaint, many courts in this district have *sua sponte* ordered substitution of the proper defendant." *Cooper v. Henderson*, 174 F. Supp. 3d 193, 200 (D.D.C. 2016) (citing, among other cases, *Henneghan v. District of Columbia Pub. Sch.*, 597 F. Supp. 2d 34, 37 (D.D.C. 2008), for the proposition that a court may "*sua sponte* order[] substitution of the District of Columbia where [a] *pro se* plaintiff . . . name[s] DCPS" as a defendant). Because

Crockett is proceeding *pro se*, because designation of the proper party defendants does not affect the substance of his claims, and because the District would not be unfairly prejudiced by substitution, the Court concludes substitution is the proper course here.  The Court will, accordingly, order that the District of Columbia be substituted for DCPS as a defendant in this action.

**CONCLUSION**

For these reasons, the Court will **GRANT** in part and **DENY** in part Defendants' motion to dismiss, or, alternatively, for summary judgment.  Defendants' motion to dismiss all claims against the Mayor of the District of Columbia is hereby **GRANTED**.  It is further **ORDERED** that the District of Columbia be substituted as a defendant for DCPS.  With respect to the remaining defendants, Defendants' motion as to Counts I, III, IV, V, VI, VII, VIII, IX, X, and XI is hereby **DENIED**.  Defendants' motion for summary judgment on Count II is hereby **GRANTED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 25, 2017